## KALAEOKEKOI *vs.* KAHELE *et al.*

### APPEAL FROM THE DECISION OF THE CHANCELLOR.

### SPECIAL TERM, DECEMBER, 1883.

### JUDD, C. J., McCULLY AND AUSTIN, JJ.

A bill to set aside the second of two alleged Royal Patents for the same land, dismissed, it appearing that the so-called second patent was the original, and that the copy made of it in the Land Office Register had been fraudulently altered.

Poverty is not a legal excuse for laches.

Courts of Equity follow the statute of limitations.

In an action to cancel a Royal Patent, plaintiff cannot, as in ejectment, recover so much land as he is entitled to; but the relief prayed for must be either granted or denied.

### OPINION OF THE COURT, BY McCULLY, J.

ON-appeal from the decision of the Chancellor dismissing the bill.

The bill sets forth that a Land Commission Award was made March 25, 1854, to Kalaeokekoi (ancestor of the plaintiff) and his heirs for certain parcels of land at Kamakela, in Honolulu; that on the 6th of June, 1855, a Royal Patent for the said awarded lands was issued to Kalaeokekoi, his heirs and assigns; that at some time unknown to the plaintiff, but believed by him to be on or after the said 6th of June, 1855, a Royal Patent for the same lands was issued to a person believed by the plaintiff to be one Kalakini, now deceased, to "Kalaeokekoi for Kalakini." That the plaintiff believes that the last-mentioned patent was obtained by Kalakini without right, through fraud. That the plaintiff is

entitled to this land by descent from Kalaeokekoi 1st, deceased intestate, but that the defendants are in possession, claiming through the said Kalakini by virtue of the last-mentioned Royal Patent. And by amendment after demurrer, that his mother, heir-at-law of Kalaeokekoi 1st, was in possession from his death to her own death in 1869. And that while he knew of the wrongful possession of the defendant, he was then and for a long time afterwards too poor to bring suit. The bill prays that the second mentioned Royal Patent may be surrendered, ordered to be cancelled by the Court, and that defendants be enjoined from using the same as a defense in actions to recover the said land.

The answer denies, on information and belief, that a patent was issued to Kalaeokekoi and his heirs, but avers that it was issued to Kalaeokekoi for Kalakini; denies fraud or mistake, and avers that at the date of the issue thereof, Kalakini was in possession, and has held by herself and her heirs, the defendants, till now.

### BY THE COURT.

The subject matter of the bill is the Royal Patent, which it is prayed be cancelled, and to that instrument, in comparison with the record in the Land Office and the copy from that record produced by petitioner, we have given much examination. The course of business in the Land Office has been to make a copy in a folio-register of each Royal Patent before delivery. The one original document is the patent signed by the King, countersigned by the Minister, and impressed with the great seal. A certified copy from the register can be obtained by any person on payment of the prescribed fee.

The portions of the two patents which it is necessary to comment upon are as follows (the words in italics are erased from the register, and the words which follow in brackets have been written over the erasures, the petitioner's copy conforming to the altered register):

No. 1985, Royal Patent, upon confirmation of the Land Commission. Whereas, the Board of Commissioners to quiet land titles have, by their decision, awarded unto Kalaeokekoi for *Kalakini* [for his heirs] Land Claim 6245, No. 1, an estate of freehold less than allodial, in and to the land hereinafter de-

scribed, and whereas, the said (the words "the said" crossed over but not erased in the register, and are omitted in the petitioner's copy,) Kalakini has commuted the title, as awarded, for a fee simple title, by the payment of the sum of three hundred and forty dollars into the Treasury.    Therefore, Kamehameha, King, etc., etc., has this day granted and given absolutely, in fee simple, unto Kalaeokekoi for *Kalakini* [his heirs] all that certain piece of land, etc.    To have and to hold the above granted land in fee simple unto the said Kalaeokekoi for *Kalakini* [his heirs], her heirs and assigns forever, etc.

Both instruments are dated June 6, 1855.

The original patent before us proves itself.    The Court takes judicial notice of the signature of the then King, Kamehameha IV., and of the Kuhina Nui, Victoria K. Kamamalu, countersigning it, as well as of the seal affixed.    Two members of the Court have also personal knowledge of these signatures, as well as of the handwriting of the then Chief Clerk of the Interior Department, by whom the patent is written.    It is unquestionably the authentic original patent issued on the 6th of June, 1855. There is no proof whatever to support the allegation that an original Royal Patent was issued to "Kalaeokekoi for his heirs," in the form of the copy which the petitioner presents, on the 6th of June, 1855, or at any subsequent day; and all the inferences from the regular course of business in the Land Office are that there were not two original patents signed by the King and countersigned by the Minister, issued the same day or on different days to different parties, for the same piece of land.

The hypothesis on which this bill is brought and sought to be maintained, therefore, fails at its initial point.

It is next claimed, in argument, that this genuine patent was issued by fraud or mistake, and that subsequently, the mistake having been discovered, the register was amended to correspond with what the patent should have been made.    The petitioner wholly fails to show any proof or probabilities in support of this surmise.    On the other hand, the facts all correspond with another hypothesis, namely : that at some time after the issue of the patent, the register was fraudulently altered to enable the

petitioner to present such a certified copy as he now bases his claim upon. Two things defeat the attempt. First, the existence of the original and authentic patent. The parties to the scheme may have reckoned on the loss of this instrument, as many other patents have been lost, destroyed by fire, or other casualty. The instrument before us is worn by handling into pieces, but no part of it is obliterated. It shows what was granted, and what was once recorded in the records of the Land Office. Secondly, the blunders and inconsistencies in the alterations. The altered instrument is made to read as a grant to "Kalaeokekoi *for* his heirs," instead of to Kalaeokekoi and his heirs, which is averred in the bill, and which would have been the proper grant if it had been to Kalaeokekoi. The habendum has the double blunder of reading "to the said Kalaeokekoi for his her heirs." It should be said that Kalaeokekoi was a man and Kalakini was a woman, so that in the original the pronoun her is used throughout, while the alterations to "his" failed to erase or change the last "her." And in the beginning of the instrument there is the amazing oversight of leaving it to read that, whereas Kalakini has paid a commutation of $340, a fee simple title is accordingly granted to Kalaeokekoi.

The alterations are so imperfectly and inconsistently made that the register could be restored to its original verity, even without the aid of the extant original patent.

The Court is asked to cancel an authentic Royal Patent in favor of a record bearing such badges of fraudulent alteration. This cannot be done.

But the petitioner contends that the original Royal Patent to Kalaeokekoi for Kalakini should be cancelled, as being at variance from the award, which was made to Kalaeokekoi for his heirs.

The petitioner avers possession in his ancestor of the granted lands for a prescriptive term. This is denied by respondent, and on examination of the proofs, we find that the possession of the major part of the land was in the heirs of Kalakini since 1862, and as to the remaining part, there was undisputed possession for fifteen years. The petitioner has shown that he became of legal age about a year after the Royal Patent was issued, and was under no disability, except that of poverty, which

cannot be seriously contended to be a legal excuse for his laches. The possession of the respondent should have put him on enquiry. Courts of equity act in obedience to the statute of limitations, and as the larger part of the estate is shown to have been in the possession of respondents for twenty years, the statute is a complete defense, and compels equity to deny relief on the ground of laches.

See *Kalakaua et al. vs. Keaweamahi et al.*, 4 Hawn. Repts. 477.

So far as the Royal Patent covers the land shown to have been in respondent's possession for a less period than the statutory limit, that is, for fifteen years, we think that the petitioner is not entitled to relief. This is not an action of ejectment, wherein the plaintiff can recover so much of the real estate as he has shown title to, but it is a bill to cancel the whole patent, and the petitioner must either have the relief prayed for, or it must be denied him.

We think this sufficient upon which to dismiss the bill. But if only fifteen years of adverse possession of respondents be considered as shown, this, under the circumstances of this case, is evidence of such laches on the part of the petitioner in the prosecution of his rights, and of such unreasonably long acquiescence in the assertion of the adverse claims of the respondent, as to oblige equity to decline to interfere in his behalf.

Story's Equity Juris., Sec. 1520 and notes, may be referred to as supporting this doctrine.

Bill dismissed.

*Dole and Bickerton*, for petitioner.

*Hatch and Brown*, for respondents.

Honolulu, January 8, 1884.