## IN THE MATTER OF THE ESTATE OF MELE K. KAWAI, DECEASED.

### No. 2530.

SUBMITTED SEPTEMBER 1, 1943.          DECIDED OCTOBER 18, 1943.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY KEMP, C. J.

This is an appeal from the decision of the presiding judge of the circuit court, fourth circuit, at chambers, in equity, dismissing the amended petition of Charles L. Hanohano for the revocation of the probate of the will of Mele K. Kawai, deceased.

The record discloses that the will is dated June 10, 1936; that the testatrix died June 14, 1936; that the petition for probate of her will was filed June 17, 1936; that the will was duly admitted to probate July 10, 1936; that the final order of distribution was made and entered January 13, 1937; and that the appellant's petition for revocation was filed on February 4, 1942, and the amended petition was filed on November 13, 1942.

Enoch Poha, the principal beneficiary under the will, interposed a motion to dismiss the amended petition on the ground, among others, that it does not "set forth and

or state any good and sufficient grounds or reasons, why the petitioner did not contest the Admission of the Will to Probate at the hearing of the petition for the Admission of said Will to Probate."

In granting the motion to dismiss the presiding judge said: "In explanation of why the petitioner did not until February 1942 take appropriate action, it is alleged that not until October 1941 did the petitioner know that the Will admitted to probate in 1936 had been improperly executed. It is recited in this regard that the petitioner, a local person, in October 1941 while visiting in the district where the testatrix had resided, made diligent search and inquiry for information connected with the execution of the Will which has been admitted to probate and discovered from a Mrs. John Hanohano and a Mrs. Hattie Makuakane the matters which he has alleged in this amended petition, upon information and belief as the basis of his prayer that the probate should be revoked. Nowhere in the amended petition is the five odd year delay in bringing this matter to the court's attention explained nor is it alleged that such information was not with the exercise of proper diligence available to the petitioner until October 1941.

"Assuming without deciding that the amended petition is sufficient as to its various other allegations aside from that of due diligence, in the absence of a proper allegation as to why this newly discovered evidence could not have been ascertained by the exercise of proper care and diligence at the time of the probate proceedings and certainly long prior to October 1941, I find the amended petition to also be defective.

"Accordingly, the motion to dismiss the amended petition is sustained upon this ground."

For the purpose of this decision it may be assumed that the amended petition alleged sufficient grounds for

revocation of the probate of the will if seasonably presented.

From the foregoing statement of the sequence of events, it will be seen that more than five years intervened between the probate of the will and the filing of the petition for the revocation thereof.

*Wood* v. *Carpenter*, 101 U. S. 135, 139, 140, is instructive as to the character of diligence required to overcom' a charge of laches. Although it involved a statute of limitations, the court pointed out that the portion of the statute relied upon had "been imported from equity" and that therefore the adjudications of equitable and legal tribunals upon the subject are alike entitled to consideration. In discussing the failure of the pleader to negative a lack of diligence in discovering the fraud upon which he relied, the court said: "It will be observed also that there is no averment that during the long period over which the transactions referred to extended, the plaintiff ever made or caused to be made the slightest inquiry in relation to either of them. The judgments confessed were of record, and he knew it. It could not have been difficult to ascertain, if the facts were so, that they were shams. The conveyances to Alvin and Keller were also on record in the proper offices. If they were in trust for the defendant, as alleged, proper diligence could not have failed to find a clew in every case that would have led to evidence not to be resisted. With the strongest motives to action, the plaintiff was supine. If underlying frauds existed, as he alleges, he did nothing to unearth them. It was his duty to make the effort. * * *

"The discovery of the cause of action, if such it may be termed, is thus set forth: 'And the plaintiff further avers that he had no knowledge of the facts so concealed by the defendant until the year A. D. 1872, and a few weeks only before the bringing of this suit.'" The final

conclusion of the court is stated thus: "A general allegation of ignorance at one time and of knowledge at another are of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner."

*Hardt* v. *Heidweyer*, 152 U. S. 547, 558, an equity case, is also instructive on the question of laches. There the court said: "* * * we are constrained to hold that the plaintiffs have not shown due promptness in asserting their rights. It is said by counsel for defendants that it was the decision in *White* v. *Cotzhausen* which enabled the plaintiffs to perceive that they had been defrauded, and our attention is called to the fact that the opinion in that case was announced January 28, 1889, and this suit was commenced April 23, 1889. *Post hoc, propter hoc,* is not, however, sufficient, and the rule of causation implies some other sequence than that of time. Nevertheless, the plaintiffs waited nearly five years before commencing any proceedings to charge the preferred creditors, and no satisfactory excuse for the delay is shown. It is well settled that a party who seeks to avoid the consequences of an apparently unreasonable delay in the assertion of his rights on the ground of ignorance must allege and prove, not merely the fact of ignorance, but also when and how knowledge was obtained, in order that the court may determine whether reasonable effort was made by him to ascertain the facts." All of the foregoing could be paraphrased to fit the facts of the case at bar.

We agree with the conclusion of the presiding judge. No attempt was made to explain why petitioner delayed for more than five years to make inquiry into the circumstances surrounding the execution of the will. The statement that until then he believed the will had been properly executed does not excuse the delay in making inquiry. Petitioner was the principal beneficiary under an earlier

will. He should have been, therefore, at least curious to know whether or not the later will was valid and sufficient to revoke the earlier will. Instead of instituting his inquiry promptly while the probate proceedings were pending, he negligently permitted the will to be admitted to probate, the estate to be administered and distributed years before making any attempt to ascertain the facts. This conduct falls far short of the diligence required to excuse such delay. When a party is confronted with a plea of laches and pleads ignorance of the facts to avoid the effect of the plea, he must set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to keep him in ignorance. (*Hardt* v. *Heidweyer, supra*, at 559.) A casual reading of the petition demonstrates that it falls short of meeting the test.

The order appealed from is affirmed.

*W. C. Achi* for petitioner.

*W. H. Beers* for respondent.

