## BUTCHER v. UNITED ELECTRIC COAL CO.

### No. 9817.

United States Court of Appeals
Seventh Circuit.

June 9, 1949.

Matthew E. Murray, Chicago, Ill., Horace E. Gunn, Danville, Ill., Ray J. Schoonhoven, Elgin, Ill., for appellant.

David Jacker, Dudley F. Jessopp, Walter T. Kuhlmey, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, KERNER and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff appeals from an order dismissing his cause for reasons set forth in a memorandum opinion promulgated by the court in allowing the defendant's motion to dismiss the amended complaint based principally on a release signed by the plaintiff some eleven years before the action was brought.

In the original complaint, appellant alleged that in 1919 one Moore engaged his services to negotiate the purchase of several strip coal mining enterprises located in Illinois and Ohio; that, in consideration of these services and appellant's further agreement to manage and promote the sales of coal from the mines for a period of two years following their purchase, Moore agreed that appellant should receive a 15% interest in these properties and a 25% interest in any properties subsequently acquired by Moore for strip mining purposes; that appellant did negotiate and complete the purchases contemplated and did actively manage and promote the sales of coal from the mines.

The complaint further alleged that on August 1, 1921, Moore conveyed all the assets of the mining enterprises to the United Electric Coal Companies, a Delaware corporation which had no other assets and of which Moore owned all the outstanding capital stock; that thereafter Moore assigned 15% of the common stock to appellant and agreed with him that his 25% interest in after acquired properties should consist of his 15% stock interest plus an additional 10% of the net profits realized from any thereafter acquired properties, whether by mining, lease, sales or otherwise, the purchase of which was negotiated after the original purchase but before August 1, 1921; that thereafter Moore assigned 20% of the stock to four other employees in equal shares of 5% each; that between the dates of the original purchases and the conveyance to United, appellant negotiated the purchase of a number of additional properties having a total estimated tonnage of over 5,000,000 tons of coal, for a total purchase price of $285,000; that Moore paid $30,000 on the purchase price of the properties under the contracts of purchase and thereafter assigned these contracts to United, subject, however, to the terms of his agreement with appellant as indicated by a certain letter addressed to United, signed by Moore,[1] a copy of which was attached to the complaint to which were also attached two letters to appellant acknowledging receipt of a copy of the letter of Moore and stating that these letters referring particularly to two properties, had been attached to the records relating thereto, and that the letters represented acceptance of notice from him covering the matter of his title and interest therein.

The complaint also alleged that United started mining operations in 1928 on a portion of the acreage, thereafter extracting

---

[1] "April 1, 1922

"I have this day assigned to United all my right * * * in the contract for certain coal lands with * * * Swallow and * * * Bookwalter * * * upon which an amount in excess of $30,000 has been paid.

"It is my understanding with Mr. F. E. Butcher that he shall have 10% of the amount realized from the operation in excess of the cost of the property, its development and operating expenses when the same shall be determined. It is not my intention, however, to create any priority or charge that would be superior to the earnings of your companies.

"This understanding is the result of an agreement when the title to the lease of the properties now owned by you were in my name that the interest of Butcher in the operating properties should be 15%, and in any after-acquired property 25%. It is my intention and desire to put you on notice that upon the computation of the receipts from such after-acquired properties, in whatever form or manner such computation shall be made, that the net result shall furnish Butcher with 25% of such net, taking into consideration his percentage due to the 15% stock interest heretofore received on the formation of this corporation.

"It is my understanding also that the same arrangement is to apply to any property held either in my name or in the name of Butcher by option or contract at the date that United acquired its properties, to-wit, August 1, 1921."

coal on which it realized a net profit of $3,500,000 prior to sale of the tract in the year 1939 for $4,000, of which net profits appellant was entitled to receive $350,400, according to his agreement with Moore. The complaint claimed additional recovery on account of the failure of United to develop and exploit the other properties included in the agreement with Moore. The prayer of the complaint sought an accounting of all net profits from the mining, rental and sale of the real estate referred to, specific execution of the trust in the undeveloped real estate or that appellant's interest therein be ascertained and defendant required to account therefor, and any further equitable relief to which appellant might be found entitled.

Defendant's response to the complaint was a three-part motion (1) to dismiss, (2) to strike, and (3) for a more definite statement. The motion to dismiss set up four grounds: Failure to state a claim on which relief could be granted; statute of limitations and laches; statute of frauds; and a release, dated December 2, 1936, signed by appellant, a copy of which was attached thereto. This release was a general one, reciting consideration of $400 paid by United, and releasing "all manner of actions * * * in law or in equity * * which I now have against United * * * or ever had, or which my heirs * * * hereafter can, shall or may have, for, upon, or by reason of any matter * * * from the beginning of the world, to the day of the date of these Presents."

Appellant then filed an amended complaint setting up additional allegations relating to (1) the creation of a trust by the assignment of the properties subject to the terms and conditions in the letters referred to above, and the acceptance of that trust by acceptance by United of the properties with notice of the obligations, and (2) the release, a 1936 instrument which appellant alleged was intended to cover only a certain note for $4,000 on which he had brought suit in that year. The prayer of the amended complaint sought further relief in a declaration as to the effect of the release, or that it be reformed to comply with the intent of the parties. United filed motion to dismiss the amended complaint setting up the same four grounds relied upon in its original motion to dismiss.

The trial judge in a carefully prepared opinion ruled that the motion to dismiss must be allowed, basing his decision largely on the release, stating that he was of the opinion that it "expressed the true intent of the parties. The allegation in the complaint that the release was intended only to release the claim upon which plaintiff had brought suit against defendant in the Circuit Court of Cook County in 1936 is merely a legal conclusion of the pleader not supported by any facts." He also held that the matter set up in the complaint relating to the agreement between Moore and appellant was insufficient to establish a trust, accepted by United, and that any claim of appellant must have arisen in 1922, and he had remained quiet for twenty-six years while United was developing the properties in question.

After the filing of the opinion on the motion to dismiss, appellant sought to file an amendment to the amended complaint setting up further matter relating to the assignment of the properties by Moore to United, and designed to show the assumption of the obligation along with the acceptance of Moore's interest in the properties. The amendment also sought reformation of the release on the ground of mutual mistake. On motion of United, the court ordered that the amendment to the amended complaint be stricken and that the motion to dismiss stand as to that amendment, and that the cause be dismissed for the reasons set forth in his memorandum theretofore filed.

At the outset we are met with appellant's contention that only the assertion that the complaint should be dismissed for failure to state a cause of action upon which relief could be granted was properly raised by the motion to dismiss under Rule 12(b), Rules of Civil Procedure, 28 U.S. C.A., and that all other defenses should have been pleaded as affirmative defenses under Rule 8(c).

Rule 8(c) provides that in pleading to a preceding pleading, a party shall set forth affirmatively any of some nineteen de-

fenses, including laches, release, statute of frauds, statute of limitations, and any other matter constituting an avoidance or affirmative defense. Literally construed this appears to provide that affirmative defenses may be raised only by a pleading and not otherwise. However, according to Moore's Federal Practice, 2d Ed., Vol. 2, par. 8.28, this is too narrow a construction of the rule, and if a defect is apparent on the face of the complaint, it may be raised by a motion to dismiss for failure to state a claim, which may be supported by affidavits. The 1946 amendment to Rule 12(b) provides that: " * * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Rule 56 permits the entry of summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We conclude that appellant's contention that the affirmative issues raised by appellee's motion to dismiss could under no circumstances be properly so raised is not sound. The correctness of the ruling on the motion to dismiss, then, turns on two questions, (1) whether the allegations stated a claim on which relief could be granted, and (2) whether the other issues presented by the motion could be disposed of summarily.

With respect to the first question, we are of the opinion that appellant did allege sufficient facts from which a cause of action may be spelled out. He alleged a unilateral agreement with Moore, wholly performed on his part, hence presumably creating an enforcible obligation against Moore; recognition of that obligation by Moore at the time of the assignment by him of the subject matter of the agreement to a corporation at that time entirely owned by himself, with notice to the corporation of the existence of the agreement already performed on appellant's part, and acknowledgment by the corporation of receipt of such notice, along with acceptance by it of the subject matter of the agreement. Of course it was unnecessary for appellant to plead all the evidentiary facts upon which he intended to rely on the trial of his cause on the merits. Asher v. Ruppa, 7 Cir., 173 F.2d 10. We do not understand that Moore, by creating a corporation and assigning the option to it could thereby slough off the burden of the agreement with appellant. We are convinced that the allegations of the complaint were sufficient to entitle appellant to his day in court unless he was barred by the other defenses asserted by United in its motion to dismiss.

This brings us to the second question, whether the other issues presented by the motion to dismiss could be disposed of summarily. According to Rule 12(b) and its associated Rule 56, summary judgment may be rendered only if there are no genuine issues of fact to be resolved. The judgment is authorized only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, and that no genuine issue remains for trial. Sartor v. Arkansas Gas Corp., 321 U.S. 620, 623, 64 S.Ct. 724, 88 L.Ed. 967. On such a motion it is no part of the court's function to decide issues of fact, but solely to determine whether there are any such issues of fact to be tried. Lane-Bryant Inc. v. Maternity Lane, 9 Cir., 173 F.2d 559; Begnaud v. White, 6 Cir., 170 F.2d 323. Hence the question is whether the other defenses raised questions of law or fact.

The other defense principally relied upon by United and by the court on the dismissal was the release. The general rule appears to be as stated in 45 Am.Jur. on Release, § 51, "Courts of equity will restrict a general release to the thing or things intended to be released. As on a release of all demands, when some particular demand was in view, the court of chancery will not allow the releasee to take advantage of the general words to defeat the collection of a demand not then

in the minds of the parties. So, too, a court of equity will reform contracts in all cases, on a proper showing that they were so drawn as not to express the intention of the parties, * * *"

In other words, in an equity proceeding the matter may be inquired into as a question of fact whether a general release was intended to cover a specific claim. And the court here appears to have considered it as such, in ruling that it was his opinion that the release did express the true intent of the parties. This was not within the scope of his authority under a motion to dismiss the action.

The same error is to be found in the ruling on the issue of limitations and laches. We note that the limitation here involved is not of the jurisdictional type involved in, for instance, Wisconsin Bridge and Iron Works v. Ill. Terminal Co., 7 Cir., 88 F.2d 459, which, of course, would present a question of law. Instead, we have the more usual type which is to be relied upon as a matter of affirmative defense and which may be avoided by various facts such as those which appellant was denied opportunity to bring forward. The same is true of the statute of frauds, the third issue raised by the motion to dismiss. According to Regan v. Grady, 343 Ill. 423, 175 N.E. 567, 569, "It is well settled that, where a contract has been performed by a complainant, the statute of frauds cannot be interposed as a defense to his bill for appropriate relief." And, of course, § 9 of the Illinois Statute of Frauds and Perjuries provides that trusts created by construction, implication or operation of law need not be in writing but may be proved by parol. Ill.Rev.St.1947, Ch. 59, § 9. See also Ropacki v. Ropacki, 354 Ill. 502, 188 N.E. 400.

It seems clear that the basis for the decision was not that there were no controverted issues, but rather that there were such issues, as to all of which the court ruled adversely to appellant, although "on a motion to dismiss because the complaint fails to state a cause of action, the facts set forth in the complaint are assumed to be true * * *." Land v. Dollar, 330 U.S. 731, footnote 4, at 735, 67 S.Ct. 1009, 1011, 91 L.Ed. 1209. See also Asher v. Ruppa, supra.

For the reasons stated, the judgment is reversed and the cause remanded for further proceedings.