JOHN P. BULGO *v.* SALVADORA M. BULGO.

NO. 3051.

ARGUED FEBRUARY 16, 1956.        DECIDED FEBRUARY 8, 1957.

TOWSE, C. J., STAINBACK AND RICE, JJ.
(Towse succedeed by Rice as C. J. at time of opinion.)

OPINION OF THE COURT BY STAINBACK, J.

This case was argued and submitted to the full court. The term of one of the justices, in the interim, having expired and he having left the bench, it was stipulated by all parties that the case be decided and opinion rendered by the two remaining justices.

It is an appeal from a decree dividing the community property of the parties accumulated while the territorial

community-property law was in effect (April 12, 1945 to May 11, 1949). The parties were married on May 26, 1926, which marriage continued until a divorce decree was entered on February 23, 1949. At the time the community-property law came into effect April 12, 1945, the libelant owed the Federal Government approximately $46,000 in unpaid income tax and penalties. During the existence of the community-property law there were imposed additional assessments but various payments were made thereon during this period so that he owed $16,900 at the time the divorce was granted.

During the proceedings and prior to the granting of the divorce, the court on November 18, 1948, rendered a decision which made findings as to the community or separate character of specific property but made no division of community property because, in its opinion, there was insufficient evidence of the debts of the community property and the net profits of appellant's various enterprises. Proceedings were delayed pending settlement of the Federal tax lien, considered a community debt by the court.

While the case was pending the parties agreed to a severance of jointly owned property which had been found to constitute separate property under the November 18, 1948, decision. Such settlement was made without prejudice to any of the libelee's rights in the community property listed in the decree of November 18, 1948. There was a substantial difference in the shares of the parties of the jointly owned property.

On December 23, 1954, a decree was entered making a finding as to community property and a division thereof. This decree found that Exhibit J-54, a so-called balance sheet of appellant's net worth as of December 31, 1949, was the most accurate determination of the community prop-

erty and, after making several deductions, divided the property set forth in Exhibit J-54 equally.

This decree was implemented by a supplemental decree of divorce filed May 7, 1955.

From this decree the libelant appealed on the grounds that the Community-Property Act in so far as it purports to make subject thereto income from property owned solely by libelant prior to the effective date of the Community-Property Act, namely April 12, 1945, is unconstitutional; that it is contrary to the Fifth and Fourteenth Amendments to the Constitution of the United Sates in that it takes private property without due process of law: that the findings were inconsistent with the decree of November 18, 1948; that the Federal tax lien assessed against appellant prior to the effective date of the community-property law and the amount remaining at the termination of the community property should be considered in determining the amount of the community property, and that the unequal shares of the spouses in the voluntary division of the jointly owned property was ignored by the court.

Act 273, Session Laws of Hawaii, referred to as the Community-Property Act, defines the separate property of the husband as all property, both real and personal, owned by him before marriage or before the effective date of the Act, whichever is later, and all property acquired by the husband thereafter by gift, devise, bequest, or descent, and also all substitutions for any such property made at any time by sale or exchange or other disposition. A similar provision relates to the separate property of the wife. Compensation for personal injuries is the property of the person sustaining the injury.

The Act then defines community property as follows: "Except as otherwise provided in this chapter, all property, both real and personal, including earnings of the husband and earnings of the wife and including rents,

issues, income and other profits of the separate property of the husband and rents, issues, income and other profits of the separate property of the wife, acquired by the husband or by the wife after marriage or on or after the effective date of this chapter, whichever is the later, shall be community property of the husband and wife, and each shall be vested with an undivided one-half interest therein."

The American community-property system which existed in the States carved from Spanish colonies in this country is borrowed from the Spanish law and we must look to this source for the reasons which induced its adoption and the rules and principles which govern its operation and effect. (*Packard* v. *Arrellanes,* 17 Cal. 525, 537.)

The basic idea of the Spanish law was that upon marriage the husband and wife became partners as to subsequent "gains and acquets" with the profits of the partnership to be divided equally upon its dissolution. Both partners contributed to the partnership their time and efforts and use of and revenue from their individual capital. (*Swanda* v. *Swanda,* 207 Okla. 186, 248 P. [2d] 375.)

"Under the Spanish law of community property, no matter whether the separate property of one spouse was the spouse's separate property at the time of the marriage or was acquired as separate property by that spouse after the marriage, the fruits and profits of that separate property were community property, belonging to both of the spouses by halves. * * * This was based on the conception that, although each spouse retained ownership of his or her separate property, each unselfishly and unhesitantly had at heart the success and well-being of the marital union and that, accordingly, the fruits and income of all property of each naturally were to be devoted to the benefit

of the marital union." (1 de Funiak, *Principles of Community Property, Community and Separate Property,* § 71, pp. 179, 180.)

The general basic intent of the community-property law is to provide a return to the wife for her labors in the home which are legislatively considered to be substantially commensurate with the efforts of the husband in marital economic gain. (*In Re Holloway's Estate,* 175 F. [2d] 672.)

The claim is made that the Act is unconstitutional, in so far as it purports to make community property of income from property owned solely by the libelant prior to the effective date of the Community-Property Act, because it attempts to transfer property from one person to another.

The case of *Willcox* v. *Penn. Mutual Life Ins. Co.,* 357 Pa. 581, supports this point of view. It holds that the provisions of the community-property law which make income and profits derived from property, real or personal, owned by a spouse prior to the Act's effective date become the property of both spouses are unconstitutional, stating it is a fundamental axiom of constitutional law that the legislative power cannot, directly or indirectly, without the consent of the owner take private property for merely private use with or without compensation. It further states that to communize the future income from property is equivalent to taking property, quoting Co. Litt. 4 b: "* * * 'if a man seised of lands in fee by his deed granteth to another the profit of those lands, . . . the whole land itselfe doth passe; for what is the land but the profits thereof.' " This case is contrary to a number of cases from other jurisdictions which uphold the constitutionality of such an Act; two more recent cases than the *Willcox* case (*Swanda* v. *Swanda,* 207 Okla. 186, and *Turner* v. *First National Bank & Trust Co.,* 292 P. [2d] 1012), decided in

Oklahoma, refuse to follow the doctrine laid down in the *Willcox* case that such Act is a taking of property without due process of law.

The Pennsylvania case admits that the legislature can regulate the relationship of property rights directly connected with marriage, all property rights "arising solely by reason of the marriage" so long as such regulation does not violate those fundamental principles which have been established for the protection of private and personal rights against illegal interference. It attempts to distinguish between the power of a State to alter and control the rights of curtesy and dower, stating such rights arise wholly out of the marriage relation itself.

As stated in *Swanda* v. *Swanda, supra,* referring to the Pennsylvania case, "That court announced that the community property law represents a concept of property that is entirely alien and foreign to that of the common law as to the marital rights in property. It declared that under the Spanish law the profits of separate property owned by each spouse at marriage becomes the property of the community, each spouse owning one-half. It recognized that this principle is followed in some community property states such as Idaho, Louisiana, and Texas, while the states of Arizona, California, Nevada, New Mexico, and Washington had statutes providing that after marriage the income from separate property shall also be separate property. The court said it was not aided by the laws and policies of the community property states but must construe, independently, the Pennsylvania Act. The court was jealous of the common-law concepts of property rights. The legal concept of the community property system is foreign to that of the common law."

The case of *Turner* v. *First National Bank & Trust Co., supra,* upheld the community-property law as to income earned from separate property of the husband and wife

during the period of the community property, even though the wife was incompetent during a portion of the period and the husband managed her property and his own. Further, that the amounts that a husband paid out of community funds for living expenses during the effective period of the community-property law created no personal obligation on the part of the husband. This case quotes with approval *Laughlin* v. *Laughlin,* 49 N. M. 20, 155 P. (2d) 1010, 1018, wherein it states the only assets of a community at its inception are the labor, skill and industry and talents of the spouses, that it could never own any property if the husband or the wife could accumulate separate property from the use or fruits of whatever either separately owned.

In discussing the constitutionality of the community-property Act, the case of *Swanda* v. *Swanda, supra,* quotes *Nebbia* v. *New York,* 291 U. S. 502, which said in substance that a State is free to adopt whatever economic policy may reasonably be deemed to promote public welfare. "In Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, it is said that so far as the requirement of due process is concerned, and in the absence of other constitutional provisions, a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied. It is further said that the Legislature is the judge of the necessity of such an enactment and every possible presumption is in favor of its validity, and it will not be annulled unless palpably in excess of legislative power."

In the case of *Baker's Executors* v. *Kilgore,* 145 U. S. 487, where the Tennessee legislature passed an Act providing that the rents and profits on estate of a married woman,

which she owns or hereafter becomes seized or possessed of, shall not be subject to the debts or contracts of her husband contrary to the then existing law, it was held such Act did not take away or infringe upon any vested rights of the husband or rights belonging to his creditors and did not violate any right secured by the Constitution of the United States. In that case the plaintiff contended that when the Act of 1879 was passed a judgment creditor of the husband had a right to subject to his demands any property vested in the husband, as were the rents and profits of the wife's estate, and that it was not competent for the legislature to exempt the rents and profits of the wife's estate from liability for the debts of the husband existing at the time such Act was passed. In upholding the Act the Supreme Court stated that the right of the husband to take profits of his wife's estate "did not come from contract between him and his wife or between him and the State, but from a rule of law established by the legislature, and resting alone upon public considerations arising out of the marriage relation. It was entirely competent for the legislature to change that rule in respect, at least, to the future rents and profits of the wife's estate."

See also *Arnett* v. *Reade,* 220 U. S. 311, where a statute of New Mexico provided that both husband and wife must join in conveyances of real estate acquired during coverture, the deed of a husband in which the wife does not join is ineffectual to convey community property even though acquired prior to the Act. This case, after citing that the wife has a remedy for alienation (of community property), made in fraud of her by her husband, stated: "And as she was protected against fraud already, we can conceive no reason why the legislation could not make that protection more effectual by requiring her concurrence in her husband's deed of the land."

As shown by the legislative reports, the purpose of the

Community-Property Act was to place the husband and wife on an equal footing as to their property rights.

The territorial senate judiciary committee report upon the proposed law, in part, is as follows:

"Under this bill all earnings of the husband and wife and all income from the property of the husband and wife would become community property, belonging half to the husband and half to the wife. The bill would not affect property owned by the husband or the wife prior to marriage or prior to the passage of the bill and would not affect property acquired by inheritance or gift subsequent to marriage.

"The changes in property rights which would be brought about by the bill are recommended because they recognize the partnership interests of the husband and wife in accumulations subsequent to marriage."

The territorial house judiciary committee report stated:

"In theory the marital relationship in respect of property acquired during its existence is a community of which each spouse is a member, equally contributing by his or her industry to its prosperity. The avowed object and purpose of the community system is to place husband and wife on an equal footing as to their property rights. The community estate is created by law as an incident of marriage. The property owned by each spouse before marriage remains his or her separate estate, while all that is acquired during coverture otherwise than by gift, descent, or devise becomes community property."

Is the Act of the legislature unreasonable in considering that the wife's labors in the home are substantially commensurate with the efforts of the husband in marital economic gain? (*In Re Holloway's Estate, supra.*) If so, may not the legislature recognize this by appropriate legislation?

No property is taken from the husband and it will be noted he has the administration and control of the community-property income, whether it be income from his own property or income from the wife's separate property (when such incomes are community property, as was in Hawaii) or income from the efforts of the labor of the community. As a rule it becomes of importance only when the community is terminated. As has been aptly said, a community is a partnership which begins only at its end.

" 'The rights of the wife are dormant during the marriage, because the husband is charged to watch over and conduct the affairs of the conjugal society. But this right, which is inert, as long as the husband is at the head of the affairs of the community, becomes active when the marital authority ceases to exist. The wife is like a silent partner, whose rights arise and reveal themselves when the partnership ceases.' Troplong, Contrat de Mariage, vol. 2, p. 136, No. 855." (*Garrozi* v. *Dastas*, 204 U. S. 64, at 79.)

The legislature has merely recognized that to which the peoples of all nations have given general recognition, as shown by the various proverbs, that is, that each spouse as a member of the community equally contributes to its prosperity, particularly its savings and gains. We find this expressed in the English proverb "Husbands can earn but only wives can save"; or, as the Scotch express the same idea, "Nae man can thrive unless his wife will let him" (and the Scotch should know).

The Proverbs of Solomon recognized the basis of community savings with the statement that the "price" of a wife "is far above rubies." After setting forth the various services she performs in bringing prosperity to the household, the Proverb concludes: "Give her of the fruit of her hands; and let her own works praise her in the gates."

It was entirely competent for the legislature to establish the community-property law and make the hus-

band and wife partners in substance as to subsequent income, even from separate property of the husband and the wife.

The next question is the claim of the libelant that the balance of $16,900 on the tax lien should be deducted from the community in arriving at a net worth. As opposed to this, the libelee claims that the reduction of the tax lien from approximately $46,000 to the $16,900 should be chargeable to the libelant as paying off a lien on libelant's separate property out of the community income. The husband was authorized to use the income of the community property in paying off the Federal tax lien as this was necessary to preserve and protect his separate property which was the basis of the community income.

This is not a case similar to *Garrozi* v. *Dastas,* 204 U. S. 64, where the husband gave away and spent large sums extravagantly, apparently for the purpose of defrauding the wife of her interest in the community property.

However, at the time of the termination of the community in this case, as the lien was upon the separate property of the husband he no longer is in a position to charge such lien to the community income, but it is obvious that the husband is better off by the difference between the original lien of $46,000 and the amount of $16,900, the tax lien existing at the termination of the community estate.

As to the claim by libelant that a disparity in division of certain property by agreement should be considered in making a division of the community between the spouses, it will be noted that agreement included a provision that the division was to be without prejudice to appellee's right in the community property. It is difficult to see how appellant can make an issue of this in view of the agreement, but the court in making an equitable distribution can take this and all other equitable factors into consideration.

The parties disagree as to the effects of section 12391.13 of the Community-Property Act. Appellant contends that the section prevents certain items from ever becoming community property, while appellee contends it limits the husband's power of disposal so that he cannot deplete the community property by expenditures in any manner other than that prescribed by the section. However, this section has no bearing upon the division of community property between the parties. It relates to funds that may be reached by the creditors of the community, separate creditors of the wife and separate creditors of the husband.

The contention by appellant that Judge Brown was bound by the prior findings of Judge Wirtz as to what constituted community property is without justification inasmuch as the decree of Judge Wirtz was not final. Judge Wirtz stated he was unable to make a division of the community property at that time because the debts of the community and the profits of some of the businesses were not established, saying: "Consequently, all the court can do at this time is to determine what comprises community property, leaving the extent of the respective shares of the parties to the subject of further court hearings through a master appointed by the Court."

There being no final decree, it could not have been appealed and there is no res judicata. (30 Am. Jur., *Judgments*, § 178, p. 920.)

Judge Brown, while dissatisfied with his conclusions because of the fact he could give no credibility to the testimony of the libelant and further because, as he stated, "There has been no accurate picture presented to the Court of the net-worth of the parties at the beginning and the end of the community and no proper showing has been made to reflect the distinction between principal and income during the period," adopted Exhibit J-54 for making an accurate determination of the community property and

divided it accordingly. We agree with him that the matter should have originally been referred to a master "skilled in untangling jumbled business and personal records in 1949 as Judge Wirtz suggested."

When we consider the rule that all property obtained by either spouse after the commencement of the community is presumed to be community property but such presumption is subject to rebuttal, and the further fact that several of the libelant's enterprises which had been prospering for a number of years had disappeared with no clear showing of what had become of their profits and assets, we feel that there was no abuse of the judge's discretion in fixing the amount due the libelee.

Affirmed.

*Wendell F. Crockett* (also on the briefs) for appellant.

*Clarence Garvey, Jr.* (*Bouslog & Symonds* with him on the brief) for appellee.