ODIENE R. YOKOCHI AND CHARLES R. YOKOCHI
*v.* WATSON T. YOSHIMOTO, OAHU CONSTRUC-
TION CO. LTD., A HAWAIIAN CORPORATION,
JACK HAMADA, HELEN HAMADA, DON SHIRA-
KI, NORMA SHIRAKI, SATOMI YOSHIMURA,
KIMIKO YOSHIMURA, HARRY IMAMURA, SA-
KAYO IMAMURA, TED KONDO, ALBERT HA-
MAMOTO AND GORDON GAU.

No. 4071.

JUNE 14, 1960.

TSUKIYAMA, C. J., MARUMOTO, CASSIDY,
WIRTZ AND LEWIS, JJ.

298

OPINION OF THE COURT BY WIRTZ, J.

This case is a stockholder's derivative suit filed under Rule 23(b) H.R.C.P. brought by plaintiffs-appellants, Charles R. and Odiene R. Yokochi, husband and wife, who will hereinafter be designated as "plaintiffs" or as "plaintiff-husband" or "plaintiff-wife," as the case may be.

Oahu Construction Co., Ltd., a Hawaii corporation, was established as of March 21, 1947, the two principal stockholders being defendant-appellee Watson T. Yoshimoto, hereinafter referred to as "defendant," holder of a majority of the shares, and plaintiff-husband. Previously, these two parties had been partners in the same business. For a short interval after dissolution of the partnership, defendant was the individual proprietor of the business. Thereafter the corporation was created with defendant as the president and plaintiff-husband as vice-president and treasurer. Both were among the incorporators, original stockholders, and original directors. From March of 1947 to and including December of 1956, a period of some nine and a half years, plaintiff-husband continuously served as vice-president and treasurer and as a director of the corporation.

Plaintiff-wife was joined as a party-plaintiff in this action filed January 21, 1957, under the theory that she, too, had a cause of action against defendant by virtue of

the community property laws in effect on March 21, 1947. The corporate shares in question were, from the inception, registered in the name of plaintiff-husband only.

The corporation and the remainder of the present stockholders and their wives were joined as defendants with Yoshimoto, none of whom except Yoshimoto made any answer to the Complaint or First Amended Complaint. The alleged actions of defendant charged by plaintiffs as constituting fraudulent conduct, occurred in connection with the incorporation on March 21, 1947, and very shortly thereafter. Plaintiffs complained of a supposedly improper valuation of the assets of the business transferred to the corporation, and a supposedly improper sale by defendant of some of his shares to other named stockholders.

Under these basic facts established by the Motion to Dismiss First Amended Complaint or For Summary Judgment filed by defendant, the Circuit Court found that the cause of action as to plaintiff-husband was barred by the statute of limitations (R.L.H. 1955, Chapter 241), and that the attempted remedy of plaintiff-wife was "no greater than, and cannot be considered separately or apart from, that of the husband," and was therefore likewise barred by the statute of limitations. An Order and Judgment was accordingly entered on February 5, 1958, granting the motion for summary judgment, and also awarding to defendant attorney's fees in the sum of $1,250.00 against plaintiffs. From this order and judgment this appeal was taken.

The first two specifications of error relied upon by plaintiffs are: "1. The trial court erred in granting Defendant-Appellee Watson T. Yoshimoto's Motion to Dismiss the First Amended Complaint or For Summary Judgment," and "2. The trial court erred in dismissing the First

Amended Complaint filed herein." These are general in nature, along with the sixth which states that the "trial court erred in finding and concluding that 'there is no genuine issue of fact to be submitted to the trial court,'" and are dependent upon the disposition of the remaining four specific assignments of error.

More specifically, plaintiffs contend in their third specification of error that the "trial court erred in finding and concluding that the cause of action set forth in the First Amended Complaint, was barred by the provisions of Chapter 217 of the Revised Laws of Hawaii, 1945, which is Chapter 241 of the Revised Laws of Hawaii, 1955." This immediately raises the question of whether the cause of action as to plaintiff-husband was barred by the statute of limitations. This being an equity proceeding, we are more properly concerned with the question of laches rather than that of the statute of limitations.

Lapse of time alone does not constitute laches. Since laches is an equitable defense, its application is controlled by equitable considerations. It will not be applied where the enforcement of the right asserted will work injustice.

A court of equity is not bound by the statute of limitations, but, in the absence of extraordinary circumstances, it will usually grant or withhold relief in analogy to the statute of limitations relating to law actions of like character. *Ah Chong* v. *Kaluahine,* 9 Haw. 571; *Cf., Hilo* v. *Liliuokalani,* 15 Haw. 507; *Kalaeokekoi* v. *Kahele,* 5 Haw. 47. Under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute. If, however, unusual conditions or extraordinary circumstances make it inequitable to do so, a court of equity will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. When a suit is brought within the time fixed by the analo-

gous statute, the burden is on the defendant to show that extraordinary circumstances exist which require the application of the doctrine of laches. On the other hand, when the suit is brought after the statutory time has elapsed, the burden is on the complainant to establish circumstances making it inequitable to apply laches to his case. *Backus-Brooks Co.* v. *Northern Pac. Ry. Co.,* 21 F. 2d 4 (8th Cir. 1927); *Estate of Kawai,* 36 Haw. 533; *Levy* v. *Lovell,* 24 Haw. 716.

The allegations of the first amended complaint and the affidavits in the record disclose that all the facts surrounding the incorporation of the business in March of 1947, including valuation of assets transferred to the business, allotment of shares and payment therefor and the like were known and certified to by plaintiff-husband, an original incorporator, stockholder, director and officer. We may reasonably assume that as a former partner, his knowledge of the business and its operation at the time of incorporation was intimate. From the inception and until December of 1956, he attended the meetings of the stockholders and directors of the corporation and actively participated in its corporate affairs and activities.

While it is established by statute in Hawaii (R.L.H. 1955, § 241-19) that concealment of a cause of action may postpone the commencement of the running of the statute of limitations until discovery of the cause of action, still the undisputed facts here make it obvious that there could have been no "concealment" from plaintiff-husband of his right of action, if any. And it certainly can be said of plaintiff-husband that the facts constituting the alleged fraud "should with reasonable diligence, have been discovered 'or,' by the exercise of ordinary diligence, might have been discovered," thus precluding any exception to the application of the statute of limitations. *Cf., Des*

*Moines Bank & Trust Co.* v. *George M. Bechtel & Co.,* 243 Iowa 1007, 51 N.W. 2d 174; 34 Am. Jur., *Limitation of Actions,* §§ 100, 165, 167 and 231. In view of the obvious lack of "concealment" and the fact that both plaintiff-husband and defendant were the principal incorporators and therefore co-fiduciaries, it is difficult to follow plaintiffs' contention that "[therefore], he [defendant] was a corporate fiduciary and there was a duty to disclose. Nondisclosure where there is a duty to disclose amounts to concealment." We can find nowhere in the amended complaint or affidavits referred to any circumstances making it inequitable to attribute laches to plaintiff-husband whose delay from the time he should have known of the alleged fraud in bringing this suit far exceeds the comparable statutory limitation of actions. R.L.H. 1955, Chap. 241.

Nonetheless plaintiffs contend that laches is an affirmative defense under Rule 8(c) of the Hawaii Rules of Civil Procedure which cannot be raised under a motion to dismiss, or, in the alternative, for summary judgment citing *Butcher* v. *United Electric Coal Co.,* 174 F. 2d 1003 (7th Cir. 1949). While this is the general rule there is an exception where, as here, all the elements of laches are apparent from the pleadings and no question of fact remains to determine the existence of the defense. *Estate of Kawai, supra; Cf.,* Moore's *Federal Practice,* 2d ed., vol. 2, § 8.28, p. 1698 and § 12.10, p. 2257; 6 *Id.,* § 56.17(38), p. 2227; *Jones* v. *Chicago & N. W. Ry. Co.,* 25 F.R. Serv. 12b.325, Case 2, 21 F.R.D. 572 (D.C. Neb. 1958); *Athas* v. *Day,* 161 F. Supp. 916 (D.C. Colo. 1958); *Lomax* v. *United States,* 155 F. Supp. 354 (E.D. Pa. 1957); *Dam* v. *General Electric Co.,* 1 F.R. Serv. 2d 56c.431, Case 1, 265 F. 2d 612 (9th Cir. 1958); *Hunt* v. *Pick,* 240 F. 2d 782 (10th Cir. 1957). The *Butcher* case, *supra,* did not hold that "the

affirmative issues raised by appellee's motion to dismiss could under no circumstances be properly so raised * * *" (p. 1006) but rather held that the court had no power to rule on questions of fact presented by the affirmative defenses.

Having decided the applicability of the defense of laches as to plaintiff-husband's complaint, we next consider, under this third specification of error, as well as the fourth which states that the "trial court erred in finding and concluding that Plaintiff-Appellant Odiene R. Yokochi's claim is no greater than and cannot be considered separately or apart from that of the husband Charles R. Yokochi," the question whether the community property laws created another or separate cause of action in plaintiff-wife.

The general rule in community property jurisdictions is that the full control and power and dominion over the property standing in the husband's name are in the husband alone, although the fact of such control does not negative the wife's present interest. *Poe* v. *Seaborn,* 282 U.S. 101; *Hopkins* v. *Bacon,* 282 U.S. 122; 11 Am. Jur., *Community Property,* § 48, p. 205; and see Act 273, Session Laws of Hawaii 1945. In *Bulgo* v. *Bulgo,* 41 Haw. 578, this court commented at page 587 on the relationship of the spouses under our community property laws as follows:

"* * * it will be noted he [the husband] has the administration and control of the community-property income, whether it be income from his own property or income from the wife's separate property (when such incomes are community property, as was in Hawaii) or income from the efforts of the labor of the community. As a rule it becomes of importance only when the community is terminated. As has been aptly said,

a community is a partnership which begins only at its end.

" 'The rights of the wife are dormant during the marriage, because the husband is charged to watch over and conduct the affairs of the conjugal society. But this right, which is inert, as long as the husband is at the head of the affairs of the community, becomes active when the marital authority ceases to exist. The wife is like a silent partner, whose rights arise and reveal themselves when the partnership ceases.' Troplong, Contrat de Mariage, vol. 2, p. 136, No. 855. (*Garrozi* v. *Dastas,* 204 U.S. 64, at 79.)"

It is logical to conclude that the position of the wife is, at best during marriage, that of a partner, and it is axiomatic that the actions of one partner bind the partnership.

Where as here, the wrongdoing is directed against the community as such and not towards depriving the wife of her "present, existing and equal interest" in the community property, it is emphatically held that the husband is at least a necessary party-plaintiff, if not the only proper party-plaintiff, to bring an action for the protection of the community property. *Borne* v. *La Terre Company,* 222 F. 2d 453 (5th Cir. 1955); *Cutrer* v. *Spring,* 4 So. 2d 106 (La. App. 1941); *Casente v. Lloyd,* 68 So. 2d 329 (La. App. 1953); *Lucas* v. *Dallas County,* 138 S.W. 2d 179 (Tex. Civ. App. 1940); *Yearout* v. *American Pipe & Steel Corporation,* 74 Cal. App. 2d 139, 168 P. 2d 174; *Overton* v. *Benton,* 60 N.M. 348, 291 P. 2d 636.

From the foregoing and in view of the very nature of the marital relationship with respect to the community it has been flatly held that any defense applicable against the husband in an action for the protection of the community property is similarly applicable against the wife.

*Sandifer* v. *Sandifer's Heirs,* 195 So. 118 (La. App. 1940);
*Zaragosa* v. *Craven,* 33 Cal. 2d 315, 202 P. 2d 73; *Lapuyade*
v. *Pacific Employers Ins. Co.,* 202 F. 2d 494 (5th Cir.
1953); *Bell* v. *Phillips Petroleum Company,* 278 S.W. 2d
407 (Tex. Civ. App. 1954); *Choate* v. *Ransom,* 323 P. 2d
700 (Nev. 1958); *Cf., Willes* v. *Palmer,* 78 Idaho 104, 298
P. 2d 972; *Borne* v. *La Terre Company, supra; Yearout*
v. *American Pipe & Steel Corporation, supra.*

If the rule were otherwise, the law would be granting
relief through the community to one who was precluded
by a legal defense, since the fruits of judicial relief would
go into the community of acquets and gains undivided.
The court in *Bell* v. *Phillips Petroleum Company, supra,*
at page 408 states the reason for the rule thusly:

> "* * * The chose in action or the right to sue for
> damages is community property in like manner, and
> the damages after recovery fall into the community.
> It is well settled in this state that where a wife is in-
> jured while riding with her husband and the husband
> is guilty of contributory negligence that she is barred
> from recovery. This rule is based upon the theory that
> damages recovered would be community property
> which would enure to the benefit of the husband whose
> negligence contributed to the accident. * * *"

There is no question but that there is authority sup-
porting the wife's resort, even during the continuance of
the marriage relation, to appropriate judicial remedies to
protect and safeguard the community property against
fraudulent acts of the husband directed against her in-
terest. These are the cases cited and relied upon by plain-
tiffs in their briefs. However, they are not applicable
here as there is no claim that the plaintiff-husband was
guilty of any fraud or that he intended to defraud his
wife of her interest.

Plaintiffs further contend, if it be assumed "that plain-

tiff-appellant was herself barred from bringing this action because of the statute of limitations, laches or acquiescence, this being a minority stockholder's derivative suit brought in behalf of the corporation where other stockholders who are not barred by the statute of limitations, laches or acquiescence were made parties to the cause," still the court cannot dismiss the action simply because the plaintiffs who initiated the action were so barred.

In Fletcher Cyc. Corp. (Perm. Ed.) vol. 13, p. 370, § 5995, the applicable rule is thus stated: "The suit lies if any of the plaintiffs is competent to sue. Incapacity of plaintiff to maintain the suit is no objection where other competent stockholders have come in." The cases cited by plaintiffs support this rule but they certainly do not require the court to hold open the door when no one wishes to enter. Thus, where the only stockholders named as parties plaintiff in stockholder's derivative action were estopped, the corporation for whose benefit action was allegedly maintained was likewise precluded from recovery. *Ripley* v. *Colwell*, 129 N.Y.S. 2d 578.

Here, the stockholders who apparently are competent to maintain this action were joined as parties defendant. They have not filed answers nor in any way acted to evidence a desire to assert a claim or to have their rights adjudicated. While equity renders decisions in favor of not only the complaining party but also of all interested parties to the suit even though they are not complainants, still not even equity can decide where decision is unsought and unwanted.

It may be true that a corporation's director who participated in the alleged wrongdoing may repent and bring suit on behalf of the corporation, as contended by plaintiffs. However, the cases called to our attention by plaintiffs merely hold that his prior acquiescence shall not operate to estop him in seeking to rectify his wrongdoing.

But these cases do not go so far as to allow him to acquiesce in his wrongdoing for an unconscionable period of time amounting to laches before seeking reformation. The lack here of any complaining party, not subject to laches leaves no suit for trial.

In their fifth specification of error, plaintiffs state that the "trial court erred in concluding that Defendant-Appellee Watson T. Yoshimoto recover of Plaintiffs the sum of $1,250.00 as and for attorney's fees." This specification of error is well taken.

The general rule requires the litigant for whom legal services are rendered to assume the burden of paying for those services. Thus ordinarily counsel fees are not taxable as costs against the losing party in the absence of a statute, agreement or stipulation authorizing the allowance thereof. *Welsh* v. *Campbell, et als.,* 42 Haw. 490; *Bishop Trust Co. Exec.* v. *Smart, et al.,* 39 Haw. 641; *Dress Mfg. Co.* v. *Cadinha,* 33 Haw. 456. No such statute, agreement or stipulation is here present.

Although exceptions to this general rule are recognized this is not such a case. Defendant relies solely on *Sprague* v. *Ticonic National Bank,* 307 U.S. 161. That case is illustrative merely of one of the recognized exceptions inapplicable here, of allowing counsel fees where the effects of a member of a class have been instrumental in creating or preserving a fund to the benefit of the entire class.

Defendant urges, however, that Rule 54(d), H.R.C.P. "now confers on the courts the discretionary power to award attorney's fees in cases at law, whereas such discretion was formerly confined to the courts of equity." But the rule nowhere enlarged, nor permitted the enlargement of, the power heretofore residing in courts of equity. The equitable power of awarding counsel fees as heretofore may now, of course, be exercised in a civil action

that was formerly a suit in equity. *Rolax* v. *Atlantic Coast Line R. Co.*, 186 F. 2d 473 (4th Cir. 1951); *Abel* v. *Loughman*, 1 F.R.D. 734 (E.D.N.Y. 1941).

There remains to consider plaintiffs' seventh specification of error that "[the] trial court erred in not granting summary judgment against Defendant-Appellee Watson T. Yoshimoto and for the corporation Oahu Construction Company, Limited." Under this specification of error, plaintiffs ask the question: "Is a party upon whom a 'Request for Admissions' has been served and who fails to answer to such request within the time allowed, deemed to have admitted the facts sought to be admitted and should judgment be entered against him?"

The Complaint was filed herein on January 21, 1957, to which a Motion to Dismiss Complaint or for Summary Judgment was filed by defendant on February 28, 1957.

On March 14, 1957, a Request for Admissions was filed in the trial court under the title "Plaintiff, Odiene Yokochi, Request for Admission to Defendant Watson Yoshimoto under Rule 36(a)." On March 28, 1957, the trial court entered an Order Allowing Motion for Enlargement of Time in the following language: "The 'Motion for Enlargement of Time' of Defendant WATSON T. YOSHIMOTO, filed herein on March 15, 1957, having duly come on for hearing on March 22, 1957, and argument having been heard thereon, and good cause appearing for the granting of said motion, IT IS ORDERED, that said motion be and the same is hereby granted and allowed, and said Defendant WATSON T. YOSHIMOTO shall have, as the time within which to answer or otherwise plead to that certain 'Request for Admission,' to and including the date which shall be ten (10) days subsequent to the ruling of this Court on that certain 'Motion to Dismiss Complaint or For Summary Judgment' heretofore filed herein."

On April 11, 1957, the trial court entered its ruling on the motion to dismiss complaint or for summary judgment by granting same. On April 15, 1957, it entered an Order permitting Amended Complaint, which First Amended Complaint was filed on May 10, 1957. No response by defendant was ever made to the Request for Admissions above referred to.

Plaintiffs rely upon Rule 36(a), H.R.C.P. which provides that: "* * * Each of the matters of which an admission is requested shall be deemed admitted unless * * *" answered within the time provided. A non-answer is an admission of the facts sought to be admitted. *Padway* v. *Pacific Mut. Life Ins. Co. of California*, 42 F. Supp. 569 (E.D. Wis. 1942); *Jeffe* v. *Monarch Life Ins. Co.*, 123 F. Supp. 173 (D.C. Conn. 1954); *C. Corkin & Sons, Inc.* v. *Tide Water Associated Oil Co.*, 20 F.R.D. 402 (D.C. Mass. 1957); *Sieb's Hatcheries* v. *Lindley*, 13 F.R.D. 113 (W.D. Ark. 1952).

This would apply were defendant required to answer. A request for admission is a supplemental paper and as such is dependent for its existence on the vitality of the complaint which it supplements. Here the parent complaint died and the child was orphaned. The filing of the first amended complaint without more could not revive this request for admission. It had nowhere been adopted by the step-parent. In providing for an answer to the request ten days after its ruling on the motion to dismiss the original complaint, the trial court necessarily intended that dismissal of that complaint would moot the request.

Further, the fact that defendant had failed to respond to the request for admissions was, at no time, called to the trial court's attention prior to its ruling granting the motion to dismiss the first amended complaint or in the alternative, for summary judgment. It was held in

*Adkins* v. *E. I. Du Pont De Nemours & Co.*, 181 F. 2d 641 (10th Cir. 1950), that where plaintiff did not request the trial court to postpone hearing on defendant's motion for summary judgment until plaintiff's request for admissions had been answered, or in any other manner raise objection that he was entitled to have his request for admissions answered and have the answers considered by the trial court when it passed on the motion for summary judgment, plaintiff could not urge for the first time on appeal that the trial court erred in deciding the motion for summary judgment before request for admissions had been answered and made available to plaintiff.

Accordingly, the order and judgment appealed from is reversed insofar as the allowance of an attorney's fee is concerned but is otherwise affirmed.

*Genro Kashiwa* (*Shiro Kashiwa* with him on the briefs) for appellants.

*Thomas W. Flynn* (also on the briefs) for appellee Watson T. Yoshimoto.