MICHAEL G. CHAMBRELLA, SAMUEL PALAMA, KATHERINE L. ROQUE, RICHARD A. T. TAM, LUCILLE T. TOYAMA, and HAJIME TSUDA, Petitioners-Appellants, *v.* ARTHUR A. RUTLEDGE and UNITY HOUSE, INCORPORATED, a Hawaii corporation, Respondents-Appellees, and JOHN DOES 1-30, et al., Defendants, and HAWAII TEAMSTERS AND ALLIED WORKERS UNION, LOCAL 996, Respondent-Appellee

NO. 11031

(CIV. NO. 56396)

JULY 21, 1987

LUM, C.J., NAKAMURA, PADGETT, AND HAYASHI, JJ., AND CIRCUIT JUDGE CHANG IN PLACE OF WAKATSUKI, J., DISQUALIFIED*

---

*Circuit Judge Chang, who heard oral argument in this case, retired from the court on June 30, 1987. HRS § 602-10 (1985) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY NAKAMURA, J.

After hearing the plaintiffs' evidence, the Circuit Court of the First Circuit dismissed the suit brought by two members of the Hawaii Teamsters and Allied Workers Union, Local 996 (Local 996), and four members of the Hotel, Restaurant Employees and Bartenders Union, Local 5, AFL-CIO (Local 5), against Unity House, Incorporated, a Hawaii non-profit corporation (Unity House), and Arthur A. Rutledge, its president, wherein the plaintiffs charged Rutledge and other unnamed defendants with repeated breaches of their fiduciary duties to the corporation and sought the appointment of a receiver and other relief. The circuit court concluded, *inter alia*, that the plaintiffs "failed to show . . . they fairly and adequately represent[ed] the interests of the membership of Unity House, Inc.[,]" the "equitable remedies requested . . . [were] not practicable[,]" and "[p]laintiffs [did] not request[ ]

any remedies at law." The Intermediate Court of Appeals affirmed the trial court's decision on grounds that the plaintiffs could not establish membership in the corporation and lacked standing to maintain a derivative suit. Upon a review of the record, however, we conclude the suit, though styled as a derivative action, was not one cognizable as such and equitable relief for the plaintiffs was not precluded. Thus, we vacate the dismissal and the affirmance and remand the case to the circuit court for further proceedings.

## I.

### A.

Unity House, a non-profit corporation formerly known as the Hawaii Federation of Labor Memorial Association, was granted a charter on December 24, 1951 by the Territory of Hawaii upon petition filed by Rutledge and four other persons. A primary object of the organization, as expressed in the charter, was "[t]o bring together in a benevolent and fraternal organization all members, past members, and friends of the American Federation of Labor in . . . Hawaii, including the Hotel, Restaurant Employees and Bartenders Union, the International Brotherhood of Teamsters, and the Transit Workers Union, Independent." Another purpose of the corporation was "[t]o acquire and provide suitable quarters for the meeting, assembling, recreation, and education of members and their families." The charter also recited that "[p]ersons who are members, past members, or friends of the American Federation of Labor in . . . Hawaii, including members, past members, and friends of the Hotel, Restaurant Employees and Bartenders Union, [t]he International Brotherhood of Teamsters, and the Transit Workers Union, Independent, may be admitted as members of the corporation by the affirmative vote of its Board of Directors at any meeting thereof duly called and held."

The plaintiffs, Michael G. Chambrella, Samuel Palama, Katherine L. Roque, Richard A.T. Tam, Lucille T. Toyama, and Hajime Tsuda, though concededly qualified for membership in Unity House through active membership in local unions affiliated with the International Brotherhood of Teamsters and the Hotel,

Restaurant Employees and Bartenders Union, had not been admitted formally to membership in the non-profit corporation. But Rutledge had "repeatedly represented to the members of Local 5 and Local 996, from the inception of Unity House, Inc. until at least October 1978, that the members of Local 5 and Local 996 were automatically members of Unity House, Inc." Finding of Fact No. 17, entered by the circuit court on November 5, 1985.[1]

Claiming membership in Unity House "by virtue of their membership in Locals 5 [and] 996," the plaintiffs filed suit on December 4, 1978 against Unity House, Arthur A. Rutledge, and John Does 1 through 30.[2] The complaint charged Rutledge and the John Doe defendants with repeated breaches of "their fiduciary duties to the corporation by their failure to preserve the corporate assets from waste and the conversion of corporate assets to their personal use." The pleading further averred that no demand had been made "upon the corporation or its purported directors to bring [the] action" because "[t]here ha[d] been no duly elected or appointed board of directors since at least 1961," the "alleged current directors [were] the *alter ego* of Defendant Rutledge who solely control[led] the corporation," and he would not have "diligently prosecuted [the] action."

Rutledge and Unity House, the only defendants who were identified and served, denied that membership in Locals 5 and 996 entitled the plaintiffs to membership in Unity House, denied the allegations of violations of fiduciary duties, and raised a host of defenses ranging from the complaint's failure to state a claim upon which relief could be granted to the lack of standing on plaintiffs' part to bring the suit. Hence, a primary issue in the case from the

---

[1]The court entered its initial Findings of Fact and Conclusions of Law on November 5, 1985. However, Amended Findings of Fact and Conclusions of Law were entered on January 2, 1986 on motion of the defendants. Finding No. 17 was not repeated as an amended finding. With respect to plaintiffs' membership in Unity House, the court found instead that "[a] determination of Plaintiffs' status as members of Unity House, Inc. cannot be made from the evidence adduced, for there does not appear to be any basis upon which such a determination can be made."

[2]John Does 1 through 30 have not been identified. Local 996, however, has intervened in the proceedings as a defendant.

outset was whether the plaintiffs were members of Unity House or not.

The defendants also filed a counterclaim, charging that the plaintiffs had maliciously brought suit without probable cause and in abuse of process to further Chambrella's campaign against Rutledge for the presidency of Local 996 and to influence the government investigation of the election for officers of Local 5 in which the plaintiff members of Local 5 had been candidates. This was only the beginning of the acrimonious legal battle punctuated by numerous skirmishes that yielded thirteen volumes of documents for the record.

### B.

The case was finally heard by the circuit court in 1985 on the amended complaint filed in 1982, wherein the plaintiffs sought to buttress their claims to equitable relief with further allegations of wrongdoing on the part of Rutledge and others purportedly controlled by him and amplified their specific prayers for relief. Though the amended pleading essentially sought the removal of Rutledge as president and the ultimate dissolution of the nonprofit corporation, it also contained a general prayer requesting "such other additional relief as may seem just and equitable to the Court."

At the close of plaintiffs' case on September 4, 1985, the defendants successfully moved for a "directed verdict."[3] In its written findings entered on November 5, 1985, the trial court found, *inter alia,* that the plaintiffs were "active dues paying members" of Local 5 and Local 996, Locals 5 and 996 had each "paid a monthly amount, as a conduit for its members, to Unity House, Inc." during relevant periods, these payments amounted to more than $10 for each member, a total of $1,370,329.20 had been paid by Local 5 during the period from 1952 to January 1980, and a total of $1,264,256.30 had been paid by Local 996 from April 1957 to

---

[3] Although the defendants sought and were granted a "directed verdict," we treat this as a dismissal of the suit pursuant to Hawaii Rules of Civil Procedure (HRCP) 41(b).

January 1981. The court further found Rutledge had been "the chief executive officer of Local 996 and President of Unity House, Inc. from at least 1951 to the [time of trial]," he "repeatedly represented to the members of Local 5 and Local 996, from the inception of Unity House, Inc. until at least October 1978, that the members of Local 5 and Local 996 were automatically members of Unity House, Inc.," "[a]pplication forms for membership in Unity House, Inc. . . . did not exist until February 1982," and the members of the two locals "were never informed . . . that it was necessary to submit an application form to the membership committee of Unity House, Inc."

Findings that there had been no annual elections of corporate officers between 1961 and 1982 and no annual meetings of members between 1961 and 1983, as required under the corporation's by-laws and the laws of the State were also rendered. And other violations of fiduciary duties were found by the trial court. The court, however, found that "[a]ll of the misconduct, breach of fiduciary duties, wrongdoing and illegal acts purportedly committed by the Defendants and alleged in the Complaint have been corrected since this action was instituted or were de minimis[.]"[4] The court therefore concluded these breaches could "not serve as the bases for [a] derivative action."

The trial court further concluded that the plaintiffs had standing to bring a derivative action when suit was commenced in 1978 and defendants were "equitably estopped to deny that Plaintiffs were members of Unity House, Inc. in 1978 due to the statements of Defendant Rutledge as president of . . . Unity House, Inc., and the lack of a membership application form or a membership committee until April 1982, and the acceptance of monthly payments by Unity House, Inc. from the members of Local 5 and Local 996."

The court, however, concluded too that Chambrella and Palama could not "fairly and adequately represent the membership of Local 996" or the interests of shareholders and members of Unity House, the plaintiffs lacked "standing to bring this action because monthly payments . . . on behalf of the members of Local 5

---

[4]This factual determination appears as part of Conclusion of Law No. 7 of the Findings of Fact and Conclusions of Law entered on November 5, 1985.

[were stopped] in January 1980 and [payments] on behalf of the members of Local 996 [were stopped] in January 1981," and the directors' meeting conducted in April 1982 resulted in a valid amendment of provisions of the by-laws relating to membership and could be enforced against all of the corporation's members. The court deemed the equitable remedies sought by plaintiffs impracticable; and since no remedies at law had been requested, it concluded a "directed verdict" in favor of Unity House, Rutledge, and Local 996 was meet and just.

Arguing that "[f]indings should be made only on issues necessary to the disposition of the case" and objecting to the trial court's adoption of findings proposed by the plaintiffs, the defendants moved to amend the Findings of Fact and Conclusions of Law entered on November 5, 1985. In lieu of the fifty-eight findings and eleven conclusions therein, the defendants submitted thirty-four innocuous or self-serving findings and seventeen conclusions. The trial court entered Amended Findings of Fact and Conclusions of Law on January 2, 1986, deleting the bulk of the earlier findings. The new findings, for the most part, avoided references to events antedating the commencement of suit and emphasized what happened thereafter. The earlier conclusion that the plaintiffs had standing to sue in 1978 was omitted, as was the conclusion that defendants were "equitably estopped to deny that Plaintiffs were members of Unity House, Inc. in 1978." And the court held that "[a]t this point of the case, for the reason that no determination of the proper members of the corporation can be made upon the state of the evidence, the derivative action must fail."[5] The plaintiffs appealed, and the appeal was assigned to the Intermediate Court of Appeals for hearing and disposition.

---

[5]After the trial court granted the defendants' "Motion for Directed Verdict," defendants' counsel stated he would recommend a dismissal of their counterclaim. The court's minutes indicate the court then set a "return date of September 16, 1985," and if "counsel fail[ed] to appear, counterclaim [would] be dismissed for lack of prosecution."

The minutes further indicate counsel later informed the court "that the board of directors and defendants had voted to drop the counterclaim" and it would not be necessary to return to court on September 16, 1985.

## C.

In the appellate court's view the dispositive issue was "whether Plaintiffs, by virtue of their membership in the Hotel and Restaurant Employees' Union, Local 5, AFL-CIO (Local 5), and Hawaii Teamsters and Allied Workers' Union, Local 996 (Local 996), are members of Unity House and have standing to bring this action." *Chambrella v. Rutledge, aff'd mem.* (Haw. App., filed Jan. 23, 1987). The court deemed irrelevant the argument that the defendants were estopped from denying the plaintiffs were members of Unity House because membership requirements had been waived for members of Local 5 and Local 996 and membership dues had been paid on their behalf and accepted. It went on to say the corporate charter controlled the admission of members, the amended by-laws of Unity House calling for membership applications and action thereon by a committee were invalid, and plaintiffs had not satisfied charter requirements relating to membership. And the court concluded: "Without proof of compliance with the charter provision or its amendment to make persons in Plaintiffs' situation members of Unity House, Plaintiffs cannot claim such membership and cannot maintain this action."

We granted the petition seeking further review of the trial court's decision because we were troubled by the appellate court's ruling, which in essence was that equitable relief for plaintiffs was barred because of the defendants' failure to abide by a charter provision governing membership in the corporation, as well as the trial court's ruling that "[t]he equitable remedies requested by Plaintiffs' [sic] are not practicable[.]"

## II.

Since both courts treated the plaintiffs' suit as a derivative action and ruled the plaintiffs could not maintain the suit, we begin our analysis by examining the attributes of such actions and the procedural requisites for their maintenance.

## A.

A derivative action is a creature of equity. *Yokochi v. Yoshimoto,* 44 Haw. 297, 300, 353 P.2d 820, 823 (1960). "As business enter-

prise increasingly sought the advantages of incorporation, management became vested with almost uncontrolled discretion in handling other people's money." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 547 (1949). But "[c]orporate laws were lax and were not self-enforcing, and [shareholders], in face of gravest abuses, were singularly impotent in obtaining redress of abuses of trust." *Id.* at 547-48. "Equity came to the relief of the [shareholder], who had no standing to bring civil action at law against faithless directors and managers. Equity, however, allowed him to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own." *Id.* at 548.

When the shareholder brings a derivative action, he "is only a nominal plaintiff." 13 W.M. Fletcher, *Cyclopedia of the Law of Private Corporations* § 5939, at 13 (rev. ed. 1984). "The substantive claim belongs to the corporation[,]" and it is the "real part[y] in interest." *Id.* (footnotes omitted). The corporation thus "occupies a dual position in the litigation." H. Henn & J. Alexander, *Laws of Corporations and Other Business Enterprises* § 358, at 1037 (3d ed. 1983). It is "the real party plaintiff" and "a nominal party defendant." *Id.* And "[a]ny relief that is awarded . . . takes the form of a judgment . . . that . . . runs in favor of the corporation." 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1821, at 4 (1986) (footnote omitted).

"Where the basis of the action is a wrong to the corporation, redress must be sought in a 'derivative' action." 12B W.M. Fletcher, *supra,* § 5908, at 411 (footnote omitted). "If the injury is one to the plaintiff as a [shareholder] and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action." *Id.* § 5911, at 420 (footnotes omitted).[6] But "a personal action of this type . . . brought by representative [shareholders] on behalf of all of them . . . may qualify as a class action under [HRCP] 23." 7C C. Wright, A. Miller & M. Kane, *supra,* at 6-7.

---

[6]A shareholder, however, may "bring direct and derivative actions simultaneously." 13 W.M. Fletcher, *supra,* § 5939, at 13 (footnote omitted).

## B.

HRCP 23.1, which follows the federal paradigm and deviates from Rule 23.1 of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) in only one respect, establishes the procedures governing derivative actions.[7] The rule requires that the complaint "shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law." *See supra* note 7. This provision for "contemporaneous" ownership or membership serves "as a safeguard against champertous litigation by shareholders." 7C C. Wright, A. Miller & M. Kane, *supra,* § 1828, at 61. It "is not applicable in suits by [shareholders] to enforce their individual claims." *Id.* at 72 (footnote omitted).

HRCP 23.1 further compels the suing shareholder in a derivative action to "allege with particularity" the efforts he made "to obtain the action he desires from the directors or comparable authority and from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort." *See supra* note 7. This is, of course, consistent with the notion that the

---

[7]HRCP 23.1 reads:

DERIVATIVE ACTIONS BY SHAREHOLDERS. In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts made by the plaintiff to obtain the action he desires from the directors or comparable authority and from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

The paradigmatic federal rule, Fed. R. Civ. P. 23.1, contains a requirement that the complaint "shall allege . . . that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have."

corporation should have an opportunity to "vindicate its own rights, but when . . . those who perpetrated the wrongs also were able to obstruct any remedy, equity would hear and adjudge the corporation's cause through its [shareholder] with the corporation as a defendant, albeit a rather nominal one." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. at 548. Finally, the maintenance of a derivative action is contingent upon the plaintiff's ability to "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation." *See supra* note 7.

### C.

That the plaintiffs' amended complaint was tailored to satisfy the procedural mandates of HRCP 23.1 is undeniable. Claiming membership in Unity House at all relevant times and purporting to sue "in the right of the corporation, which ha[d] failed to enforce the claims," the plaintiffs sued Unity House, Arthur A. Rutledge, and John Does 1 through 30. They stated with particularity the reasons why the grievances were not addressed to the directors of Unity House and asserted the interests of members similarly situated would be fairly and adequately represented. Still, "[t]he distinction between a personal and a derivative action is not merely procedural. Rather, the distinction goes to the very substance of the claim and . . . can only be determined by a close reading of the complaint." *Tankersley v. Albright*, 80 F.R.D. 441, 444 (N.D. Ill. 1978).

The plaintiffs alleged in their original and amended complaints that Rutledge and the John Doe defendants had repeatedly breached their fiduciary duties to the corporation. They sought, *inter alia,* equitable relief by way of an injunction, the appointment of a receiver, the dissolution of the corporation, and the disbursement of its assets to members and creditors. When issue was joined, it became evident that whether the plaintiffs were members of Unity House or not was a primary issue. This was reiterated by the parties' trial memoranda. Plaintiffs averred in theirs that the evidence would show they were indeed members. They further averred Rutledge would, unless enjoined, continue to misappropriate

corporate funds, use Unity House personnel for private gain, destroy records to hide past misdeeds, mismanage the corporation's election process, deny members of Local 5 and Local 996 membership benefits and the right to participate in the affairs of Unity House, and fail to follow proper corporate procedures. In substance, therefore, the plaintiffs were asserting claims personal unto themselves as much as corporate claims.

The right to vote as a member of Unity House or to participate in its affairs in no sense ever belonged to the corporation, for these rights are personal to the member. "If the injury is one to the plaintiff as a [shareholder] and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action." 12B W.M. Fletcher, *supra*, § 5911, at 420 (footnotes omitted); *see also Eisenberg v. Flying Tiger Line, Inc.*, 451 F.2d 267, 269-72 (2d Cir. 1971).[8] Moreover, the plaintiffs ultimately sought "to completely effect the dissolution of the corporation (with a sale of all of the corporate non-cash assets) in accordance with the statutes and laws of this state and to disburse the resulting cash assets among the corporation's creditors and members." How relief of this nature could be melded into a judgment running in favor of the corporation, as a judgment in a derivative action must, escapes us. 7C C. Wright, A. Miller & M. Kane, *supra*, § 1821, at 4.

The circuit court, however, failed to recognize that plaintiffs were seeking redress for injury to them individually as well as to the corporation. Thus, it concluded the "derivative action must fail" and dismissed the suit. This, in our opinion, was error. That the claims allegedly derived from the corporation could not be maintained did not divest the court of jurisdiction to provide relief on the individual claims[9] — a shareholder, as we have seen, may

[8]A non-profit corporation, of course, has no shareholders; it has "members" who have "membership rights ... in accordance with its articles of incorporation or bylaws." HRS § 415B-2 (1985). But there is no doubt that the principles expressed here apply to members of non-profit corporations.

[9]The Plaintiffs could have brought a class action on behalf of all members similarly situated pursuant to HRCP 23. But their complaints were not cast as class actions and no certification of a plaintiff class was ever sought.

"bring direct and derivative [claims] simultaneously." *See supra* note 6. Though we find no reason to take issue with the circuit court's conclusion that a derivative action was not maintainable under the circumstances, we conclude the court erred in dismissing the case.

### III.

The circuit court premised the dismissal on conclusions that a derivative action could not be maintained, "a determination of the Plaintiffs' membership in Unity House [could not] be made upon the evidence adduced by a preponderance of the evidence," "no determination of the proper members of the corporation [could] be made upon the state of the evidence," and the "equitable remedies requested by the Plaintiffs[ were] not practicable and, therefore, jurisdiction in equity [was] denied." We have already noted our concurrence in the decision that a derivative action was not maintainable. But in our view the remaining conclusions cannot be sustained.

The court originally found the plaintiffs were "active dues paying members" of Local 5 and Local 996, the union locals had each "paid a monthly amount" to Unity House during relevant periods, the sums received by Unity House ostensibly as "dues" payments were substantial, and Rutledge "repeatedly represented to the members of Local 5 and Local 996 . . . that [they] were automatically members of Unity House, Inc." These findings are substantiated by the record; the record, however, belies the conclusion that "a determination of the Plaintiffs' membership in Unity House . . . cannot be made upon the evidence adduced by a preponderance of the evidence."

The conclusion that "no determination of the proper members of [Unity House] can be made upon the state of the evidence" is, of course, superfluous. In view of the plaintiffs' inability to maintain a derivative action and their failure to have a plaintiff class certified pursuant to HRCP 23, it was not incumbent upon the circuit court to decide who else besides the plaintiffs were properly members of Unity House. The court, however, was obligated under the pre-

cepts of equity practice and HRCP 54(c)[10] to consider whether there were remedies other than those specifically requested to which plaintiffs may have been entitled before dismissing the suit.

Granted, at common law the "plaintiff could not recover anything other than the relief specifically requested in the ad damnum clause of his complaint." 10 C. Wright, A. Miller & M. Kane, *supra*, § 2662, at 134. But "in equity the general practice was for plaintiff to demand whatever special relief he desired and then to add a prayer for general relief." *Id.* And "[i]f the court decided that the evidence did not justify an award of the specific remedy requested, it could rely on the general prayer for relief for the purpose of granting the relief to which plaintiff actually was entitled." *Id.* (footnote omitted); *see Paradise Hui Hanalike v. Hawaiian Paradise Park Corp.,* 66 Haw. 362, 362, 662 P.2d 211, 211 (1983) ("Where, in an equitable action, the specific relief prayed for to enforce a particular duty is inappropriate, equity should fashion, by decree, appropriate relief."); *Lum v. Kwong,* 39 Haw. 532, 542 (1952) (Even though the injunction sought cannot be granted, the chancellor may, if he finds the petitioner's allegations to be true, grant other appropriate relief under the general prayer for relief.). Fed. R. Civ. P. 54(c) and its Hawaii counterpart, HRCP 54(c), have adopted the approach of "the equity courts for all civil actions, . . . as long as the defendant has not defaulted." 10 C. Wright, A. Miller & M. Kane, *supra*, § 2662, at 134. Thus, if the "defendant has . . . begun defending the action, adherence to the particular legal theories . . . suggested by the pleadings is subordinated to the court's duty to grant the relief to which the prevailing party is entitled, whether it has been demanded or not."[11] *Id.* § 2664, at 146 (footnote omitted).

---

[10]HRCP 54(c) reads:
    Demand for Judgment. A judgment by default shall not be diffe1. at in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

It is derived from Fed. R. Civ. P. 54(c).

[11]The exception to this rule is if the plaintiff's neglect to request the appropriate relief has prejudiced the opposing party. 10 C. Wright, A. Miller & M. Kane, *supra*, § 2664, at 146-51.

Here, whether the plaintiffs were entitled to membership rights or not was raised by the defendants. The plaintiffs' failure to pray for a declaration of membership in Unity House could hardly have prejudiced the defendants. Given the abundance of proof that Unity House had obtained large sums of money and services from members of Local 5 and Local 996 laboring under a belief induced by Rutledge's frequent representations that they were members of the corporation, equitable relief enabling the plaintiffs to exercise membership rights was in order.[12] As the circuit court originally found, the defendants were estopped to deny the plaintiffs were members of Unity House. *Godoy v. County of Hawaii*, 44 Haw. 312, 320, 354 P.2d 78, 82 (1960); *Yuen v. London Guarantee & Accident Co.*, 40 Haw. 213, 230 (1953).

The order of dismissal and the judgment entered by the Circuit Court of the First Circuit and the opinion filed by the Intermediate Court of Appeals are vacated. The case is remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Sean Kim (Arthur Y. Park* and *Arlette S. Harada* with him on the writ and brief; *Gill, Park, Park & Kim,* of counsel) for Petitioners-Appellants.

*John A. Hoskins (Dean T. Nagamine* with him on opposing memorandum and brief; *Reinwald, O'Connor & Marrack,* of counsel) for Respondents-Appellees.

On the brief for Respondent-Appellee Hawaii Teamsters & Allied Workers Union, Local 996: *Colleen H. Sakurai (Koshiba & Young,* of counsel).

---

[12]This is assuming, of course, that the defendants will rest without adducing evidence rebutting the relevant findings originally rendered by the trial court.